ATTORNEY FOR APPELLANT
Patrick Lyp
Valparaiso, Indiana

ATTORNEY FOR APPELLEES
Martin R. Lucas
North Judson, Indiana

# In the
# Indiana Supreme Court

No. 75S05-0505-CV-254

THE BD. OF DIRS. OF THE
BASS LAKE CONSERVANCY DIST.,

*Appellant (Defendant below)*,

v.

SUSAN BREWER AND JOHN BREWER,

*Appellees (Plaintiffs below)*.

Appeal from the Starke Circuit Court, No. 75C01-0210-PL-50
The Honorable David Matsey, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 75A05-0312-CV 653

**December 29, 2005**

**Sullivan, Justice.**

The Bass Lake Conservancy District imposed a sewer rate higher than the standard residential rate on the home of Susan and John Brewer because the house had two kitchens and two laundry areas. The Brewers contend they are entitled to pay the standard rate because theirs is a single residence. We find the higher rate to have been within the District's authority and its imposition on the Brewers' home was not arbitrary, capricious, nor otherwise contrary to law.

**Background**

Susan and John Brewer designed and constructed a home within an area zoned solely for single-family residences in the Bass Lake Conservancy District, a governmental entity created and administered pursuant to Indiana Code Section 14-33-1-1 et seq. Conservancy districts have been authorized by the Legislature for a variety of purposes including flood prevention and control; drainage; irrigation; water supply for domestic, industrial, and public use; and, most relevant here, the collection, treatment, and disposal of sewage and other liquid wastes. Ind. Code § 14-33-1-1 (2004). The Bass Lake Conservancy District is managed by a board of directors ("Bass Lake Board") that is selected pursuant to Indiana Code Section 14-33-5.4-1 et seq. (providing that the initial board of directors is appointed by the county commissioners and subsequent vacancies filled by "vote of the freeholders of the district"). See also Ind. Code § 14-33-5-1 et seq.

The Brewer residence is listed under a single address: 5417 Riviera Court, Knox, Indiana; and is occupied by the Brewers and their extended family. The home has an upper and lower level. It is equipped with single climate control, electrical, communications, and plumbing systems. There are no walls or partitions separating the upper and lower levels, which are connected by an interior stairway with an unlocked, louvered door. The upper level is also accessible from the outside through a second stairway and door. Each level has its own living area and the home also has two kitchens and laundry areas, one on each level of the home, which according to the Brewers are to accommodate "elderly family members who may find it difficult or dangerous to climb the stairs." Appellant's App. at 122.

On the basis of the home's multiple kitchen and laundry facilities, the Bass Lake Board classified the Brewers' residence a "duplex" rather than a single-family home for purposes of assessing its sewer rate under its applicable Ordinance. This finding meant the Brewers' monthly sewage bill would increase from the single-family residence rate of $57.66 to the duplex rate of $86.52.

The Brewers objected to the rate increase and filed an appeal with the Bass Lake Board arguing that the controlling rate Ordinance contained no definition of "duplex" and "therefore

the ordinary meaning of the word should be controlling." Br. of Appellee at 2. They contended that the word "duplex in the context of residential architecture, and for the purposes of a sewer rate ordinance, requires the existence of a <u>structural separation</u> of two fully equipped units." <u>Id.</u> (emphasis in original). The Bass Lake Board rejected the Brewers' argument. The Brewers then filed a petition for judicial review. While the case was pending before the trial court, the Ordinance was amended to remove the term "duplex" and replace it with the term "multiplex." A multiplex structure was defined as a residential structure containing more than one living area.

Both the Bass Lake Board and the Brewers moved for summary judgment at trial. The trial court determined that the Bass Lake Board's classification of the Brewer's residence either as duplex (under the original Ordinance) or as multiplex (under the amended Ordinance) was "arbitrary and capricious and contrary to law," and reversed its rate assessment. Appellant's App. at 6. In a split decision, the Court of Appeals affirmed the trial court's finding that the Bass Lake Board's classification was an arbitrary and capricious exercise of its authority. <u>Bd. of Dirs. of the Bass Lake Conservancy Dist. v. Brewer</u>, 818 N.E.2d 952, 960 (Ind. Ct. App. 2004). The Bass Lake Board sought, and we granted, transfer. <u>Bd. of Dirs. of the Bass Lake Conservancy Dist. v. Brewer</u>, 831 N.E.2d 748 (Ind. 2005).

## Discussion

Both parties agree that the standard for judicial review of the Bass Lake Board's action is whether it was arbitrary, capricious, or contrary to law. More precisely, the questions for our review are whether the Bass Lake Board of Directors acted arbitrarily, capriciously, or otherwise contrary to law in: (1) defining duplex and multiplex as it did for purposes of assessing sewer rates; and (2) applying its definition in assessing and classifying the Brewers' home. Under this narrow standard of review, we "will not intervene in a local legislative process[, if it is] supported by some rational basis." <u>Borsuk v. Town of St. John</u>, 820 N.E.2d 118, 122 (Ind. 2005). We will find a municipal entity's action arbitrary or capricious only if it is "patently unreasonable." <u>South Gibson Sch. Bd. v. Sollman</u>, 768 N.E.2d 437, 441 (Ind. 2002). In short, "[j]udicial review of whether a governmental agency has abused its rulemaking authority is highly deferential." <u>Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg</u>, 694 N.E.2d 222, 234 (Ind. 1997).

In deciding these questions, we remain mindful of our quotation in Farley Neighborhood Ass'n v. Town of Speedway, 765 N.E.2d 1226, 1229 (Ind. 2002) (quoting Pub. Serv. Comm'n v. City of Indianapolis, 235 Ind. 70, 131 N.E.2d 308, 312 (1956)), that "[r]ate making is a legislative, not a judicial function." A court is not permitted to "substitute its own judgment for the municipality's discretionary authority; it may only determine whether the municipality is acting within its statutory authority." Id. In Farley, a number out-of-town customers of the Town of Speedway's sewage service sued the Town after its Town Council decided to charge them a rate 150 percent higher than that charged to its in-town customers. Id. at 1227. We upheld the rate differential finding that the Town's discretionary authority provided by statute permitted it sufficient latitude in setting differential sewage rates for in-town and out-of-town residents without the need to produce "full-scale, multi-disciplinary cost studies" as evidence to justify its actions. Id. at 1230. Similarly, our review in this case will be limited to determining if the Bass Lake Board acted within the scope of its statutory authority, and if so, whether its actions were supported by some rational basis.


# I


The Bass Lake Board has the authority under Indiana Code Section 14-33-5-21(a)(1) to "[e]stablish just and equitable rates," for the collection, treatment, and disposal of sewage and liquid waste. That authority, delineated under Indiana Code Section 14-33-22-12, permits the Board to determine rates or charges on the basis of the following criteria:

> (1) A flat charge for each sewer connection;
> (2) The amount of water used on the premises and discharged into the sewage system;
> (3) The number and size of water outlets on the premises;
> (4) The amount, strength, and character of sewage discharged into the sewers;
> (5) The size of sewer connections; and
> (6) Any combination of these factors or other factors.

4

Pursuant to its statutory authority, the Bass Lake Board determined that its sewer rates would be based upon whether a residence is classified as a duplex or multiplex dwelling or a single-family dwelling.  It distinguished duplex and multiplex dwellings from single-family dwellings on the basis of whether the structure had multiple living areas and separate cooking facilities (and other factors not relevant here).  According to the Bass Lake Conservancy District's Inspector, Tom Kruse, the Board instructed him to assess any residential structure with two or more separate living areas as "duplex."  Additionally, the Board directed Kruse to consider "whether there were separate cooking facilities. . . . [as well as] separate washer dryer facilities and separate entrances" in making his determination.  Appellant's App. at 77.

The Court of Appeals found the Bass Lake Board's definition of duplex and multiplex inadequate.  Based in part on its reading of the common usage of the term "duplex," found in the American Heritage Dictionary, the court concluded that the proper standard for distinguishing between single and multi-family dwellings was whether the home was structurally divided by walls or partitions.  See Bass Lake Conservancy Dist., 818 N.E.2d at 958-59.  While we recognize that the "usual meaning of non-technical words in a statute is defined by their ordinary and accepted dictionary meaning," Johnson County Farm Bur. Coop. Ass'n, Inc. v. Ind. Dep't. of State Rev., 568 N.E.2d 578, 581 (Ind. Tax Ct. 1991), when a government entity's intent "reveals that a word is used in a manner different from its common dictionary definition, the common dictionary definition must be disregarded."  Mechanics Laundry & Supply, Inc. v. Ind. Dep't. of State Rev., 650 N.E.2d 1223, 1228 (Ind. Tax Ct. 1995) (citing Johnson County Farm, 568 N.E.2d at 581).  In essence, the Court of Appeals substituted its own test for defining duplex and multiplex for that of the Bass Lake Board.

While we do not offer any opinion as to whether the Bass Lake Board's test is the best predictor of household sewage volume, we agree with Judge Robb's conclusion that the Bass Lake Board's standard for distinguishing between duplex or multiplex and single-family dwellings was neither arbitrary nor capricious.  See Bass Lake Conservancy Dist., 818 N.E.2d at 960-61 (Robb, J., dissenting).  The number of separate kitchen and laundry facilities in a dwelling is a rational basis for determining the number of households using the residence for purposes of as-

sessing its sewage rate.  This is a determination squarely within the discretionary authority of the Bass Lake Board.  See Farley, 765 N.E.2d at 1229.

## B

We also cannot conclude that the Bass Lake Board acted arbitrarily or capriciously in applying its sewer rate Ordinance and classifying the Brewers' home as duplex or multiplex.  As we have noted, the Bass Lake Board acted within its authority in classifying as duplex or multiplex any residential structure with more than one living area and separate cooking facilities. There is no dispute that the Brewer residence contained more than one living area and separate cooking facilities.  Because the Brewers' home fits the District's criteria for classification as duplex or multiplex under its sewer rate Ordinance, it was neither arbitrary nor capricious for the Board to classify their residence as such.  Further, the Brewers do not contend they were treated any differently than the other ten properties in the District containing more than one living area and separate cooking facilities.  Each of these homes was also classified as duplex or multiplex and billed for its sewage disposal accordingly.  These facts do not demonstrate that the District acted in an arbitrary of capricious manner towards the Brewers.  See Sollman, 768 N.E.2d at 442 (holding that "a consistently applied policy weighs against the notion that it is arbitrary").

## Conclusion

The trial court's decision granting the Brewers' motion for summary judgment is reversed.  The trial court is directed to enter summary judgment in favor of the Bass Lake Board.

Shepard, C.J., and Boehm and Rucker, JJ., concur.  Dickson, J., dissents believing the decision of the Court of Appeals to be correct.